IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-00134-PAB-KMT

SPRING CREEK EXPLORATION & PRODUCTION COMPANY, LLC,

      Plaintiff,

v.

HESS BAKKEN INVESTMENT II, LLC f/k/a TRZ Energy, LLC, and
STATOIL OIL & GAS, LP f/k/a Brigham Oil & Gas, LP,

      Defendants.

---

## ORDER

---

      This matter is before the Court on the Motion to Dismiss [Docket No. 13] filed by

defendant Hess Bakken Investments II, LLC ("Hess Bakken") and the Motion to Dismiss

Pursuant to FRCP 12(b)(1), 12(b)(2) and 12(b)(6) [Docket No. 7] filed by defendant

Statoil Oil & Gas LP ("Statoil").[1]  This case arises out of a 2009 contract between Spring

Creek and Hess Bakken.  The Court has jurisdiction pursuant to 28 U.S.C.

§ 1332(a)(1).

---

[1] Statoil's motion to dismiss was filed jointly with defendant Statoil US Holdings, Inc.  However, on March 6, 2014, the parties stipulated to the dismissal of Statoil US Holdings Inc. and to the withdrawal of that defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  Docket No. 30.  The parties also stipulated to the withdrawal of Statoil's motion to dismiss pursuant to Rule 12(b)(2).  *Id.*  The Court granted the parties' stipulated motion the following day.  Docket No. 31.  Accordingly, the only part of Docket No. 7 that is currently pending before the Court is Statoil's motion to dismiss pursuant to Rule 12(b)(6).  *Id.*

## I.  BACKGROUND

The complaint sets forth the following allegations, which, for the purpose of ruling on the instant motions to dismiss, the Court takes as true.  *See Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) ("We must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.").

Spring Creek is a Colorado company that engages in oil and gas exploration in the State of North Dakota.  Docket No. 3 at 2, 3 ¶¶ 1, 8.  Spring Creek owns or previously owned oil and gas interests in North Dakota, some of which are located in an energy-rich area known as the Tomahawk Prospect.  *Id*. at 3, ¶ 9.

On October 8, 2009, Spring Creek entered into an agreement (the "Agreement") to sell its oil and gas interests in the Tomahawk Prospect to Hess Bakken.  Docket No. 3 at 3, ¶ 10.  As part of the Agreement, Spring Creek agreed not to acquire any additional interests in the Tomahawk Prospect and Hess Bakken agreed that it would assign Spring Creek an overriding royalty interest[2] in all current and future leases it held in the Tomahawk Prospect.  *Id*.  Spring Creek and Hess Bakken also entered into an Area of Mutual Interest Agreement ("AMI") in which Spring Creek agreed to refrain from securing additional oil and gas leases in the Tomahawk Prospect and Hess Bakken agreed to "immediately notify" Spring Creek of any new leases it acquired.  *Id*. at 4, ¶¶ 13-14.  The AMI included a confidentiality clause, barring the parties from disclosing

---

[2]An overriding royalty is a "share of either production or revenue from production (free of the costs of production) carved out of a lessee's interest under an oil-and-gas lease."  Black's Law Dictionary 1839 (9th ed. 2009).

the AMI to any third party.  *Id*. at 4-5, ¶ 16.  Through November 5, 2010, Hess Bakken continued to acquire new leases in the Tomahawk Prospect and to assign an overriding royalty interest in those leases to Spring Creek.  *Id*. at 5, ¶ 17.

In April 2010, Hess Bakken sold certain of its leases in the Tomahawk Prospect to Statoil as part of an agreement not to obtain additional leases and to refrain from competing with Statoil in the Tomahawk Prospect.  Docket No. 3 at 5, ¶ 18 (the "Hess/Statoil Agreement").  As part of this agreement, Statoil purchased the leases subject to Spring Creek's overriding royalty interest.  *Id*. at 6, ¶24.  A Bill of Sale for this transaction was recorded with the Clerk and Recorder for the County of Williams, North Dakota.  *Id*. at 6, ¶ 23 ("Bill of Sale").

During the course of its negotiations with Statoil, Hess Bakken disclosed the terms of the AMI to Statoil.  Docket No. 3 at 5, ¶ 19.  Neither Statoil nor Hess Bakken informed Spring Creek that it was entering into an agreement.  *Id*. at 5, ¶ 20.  Statoil and Hess Bakken agreed to keep their agreement hidden from Spring Creek and intentionally concealed the fact that Hess Bakken would not be entering into new leases in the Tomahawk Prospect, so that Statoil would be free to obtain new leases in the area without competition from Spring Creek.  *Id*. at 5-6, ¶¶ 21-22.

Statoil has honored the Agreement, at least in part, by paying Spring Creek royalties on the leases in the Tomahawk Prospect that Hess Bakken already owned when Statoil and Hess Bakken entered into their agreement.  Docket No. 3 at 6, ¶ 27. However, Statoil has since acquired new oil and gas leases in the Tomahawk Prospect without assigning overriding royalty interests to Spring Creek.  *Id*. at 6, ¶ 28.

3

In the fall of 2012, Spring Creek realized that it had not been receiving new royalty interests and that Statoil had acquired a number of new leases in the Tomahawk Prospect.  Docket No. 3 at 6, ¶ 28.  On September 18, 2012, Spring Creek sent a letter to Hess Bakken and Statoil, raising its concerns that the parties were not complying with the terms of the Agreement or the AMI.  *Id*. at 7, ¶ 29.  On October 30, 2012, Spring Creek received a response from Statoil in which it admitted that it was aware of the terms of the AMI and that it would continue to pay royalties on those leases that Hess Bakken sold to Statoil.  *Id*. at 7, ¶ 30.  However, Statoil stated that it was not a party to the AMI and not obligated to assign an interest in new leases to Spring Creek. *Id*.

On December 13, 2013, Spring Creek filed a complaint in the District Court for the City and County of Denver, Colorado, asserting claims against Hess Bakken and Statoil for breach of contract, fraudulent concealment, and civil conspiracy.  Docket No. 3.  The complaint attaches the Agreement, including the AMI, as well as the Bill of Sale, *id*. at 12, 27, 35, but not the entire Hess/Statoil Agreement.

## II.  STANDARD OF REVIEW

The Court's function on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim.  Fed. R. Civ. P. 12(b)(6); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted).  A district court may take into account "documents referred to in the complaint if the documents are central to the plaintiff's

4

claim and the parties do not dispute the documents' authenticity." *Alvarado*, 493 F.3d at 1215 (citation and quotation marks omitted).

The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves are plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).

## III.  ANALYSIS

### A.  Claims Against Hess Bakken

#### 1.  Breach of Contract

Spring Creek alleges that Hess Bakken breached the Agreement and the AMI by:

> 1) failing to disclose to Spring Creek all leases it acquired within the Tomahawk Prospect, 2) failing to acquire new leases within the Tomahawk Prospect during the entire period of the AMI, 3) disclosing the AMI and/or the terms of the AMI to third parties, and 4) failing to honor the Override Interests on the Existing Leases.

Docket No. 3 at 7, ¶ 36.  Hess Bakken contends that these allegations fail to state a claim for breach of contract because (1) there are no allegations of fact to support the general allegation that Hess Bakken acquired, but did not disclose, a lease interest during the term of the AMI, Docket No. 7 at 4; (2) the AMI does not require Hess Bakken to acquire new leases, only to assign Spring Creek an interest in those leases it does acquire, Docket No. 7 at 4-5; (3) Hess Bakken did not breach the contract by

5

disclosing the AMI to Statoil if, as Spring Creek alleges, Hess Bakken assigned its rights and obligations under the AMI to Statoil, Docket No. 7 at 5; (4) Spring Creek waived its right to argue that Hess Bakken breached the confidentiality clause because Spring Creek subsequently disclosed the terms of the AMI to Statoil, Docket No. 7 at 5; and (5) there are no factual allegations to support the general allegation that Hess Bakken failed to honor Spring Creek's overriding royalty interest in the leases.  Docket No. 7 at 6.

In Colorado, a claim for breach of contract has four elements: (1) the existence of a contract; (2) plaintiff's performance or some justification for nonperformance; (3) defendant's failure to perform; and (4) resulting damages to the plaintiff.[3]  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Contract construction is generally a matter of law for the Court to decide.  *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo. 1994).  The primary goal in construing a contract is to "give effect to the intention of the parties."  *Town of Minturn v. Tucker*, 293 P.3d 581, 590 (Colo. 2013).  "Whenever possible, this intent should be ascertained from the plain language of the [contract] alone."  *Mid-Century Ins. Co. v. Robles*, 271 P.3d 592, 594 (Colo. App. 2011).  Courts construe undefined terms according to their "plain meaning, avoiding strained and technical interpretations."  *Fire Ins. Exchange v. Sullivan*, 224 P.3d 348, 351 (Colo. App. 2009).  "The court should interpret a contract in its entirety with the end in view of seeking to harmonize and to give effect to all

---

[3]Hess Bakken moves to dismiss under Colorado law and does not dispute that the choice of law provision in the AMI, Docket No. 3 at 29, ¶ 7, governs Spring Creek's claims against it.  *See* Docket No. 13 at 3.

provisions so that none will be rendered meaningless." *Copper Mountain, Inc. v. Industrial Systems, Inc.*, 208 P.3d 692, 697 (Colo. 2009) (quotation marks omitted).

Discerning the meaning of an ambiguous contract provision is the responsibility of the finder of fact. *Miller v. City and County of Denver*, 315 P.3d 1274, 1277 n.5 (Colo. App. 2013). A contract provision is ambiguous if "it is susceptible of more than one reasonable interpretation." *Sachs v. Am. Family Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010).

Hess Bakken does not dispute that it entered into valid contracts with Spring Creek, namely, the Agreement and the AMI. The parties' dispute primarily concerns whether Hess Bakken performed its contractual obligations.

### a. Failing to Disclose New Leases

Spring Creek asserts that the complaint "specifically alleg[es] that after November 2011, Statoil acquired new leases in the Tomahawk Prospect and that neither Hess [Bakken] nor Statoil ever disclosed those leases to Spring Creek." Docket No. 33 at 3-4. In support of this assertion, Spring Creek cites paragraph 28 of the complaint, which alleges:

> Since entering into the Hess/Statoil Agreement, Statoil has acquired numerous new oil and gas leasehold interests within the Tomahawk Prospect (the "New Leases"). Neither Statoil US, Statoil, or Hess, however, have assigned any Override Interests to Spring Creek, as required by the AMI, for the New Leases. Statoil has conceded that they are obligated to honor Spring Creek's Override Interests in the Existing Leases.

Docket No. 3 at 6, ¶ 28. The cited paragraph does not allege that Hess Bakken failed to disclose newly acquired leases, only that it failed to assign Spring Creek an overriding royalty interest in newly acquired leases. *See id*. Moreover, Spring Creek's

7

reliance on paragraph 34 of the complaint is unpersuasive, since that paragraph

similarly alleges no failure to disclose. *Id.* at 7, ¶ 34. Accordingly, Spring Creek fails to

state a claim for breach of contract based on Hess Bakken's failure to disclose leases

acquired by either Statoil or Hess Bakken after April 2010.

### b. Failing to Acquire New Leases

Hess Bakken contends that it was not obligated under the Agreement or the AMI

to acquire new leases, but only to assign Spring Creek a royalty interest in any leases

that it happened to acquire in the Tomahawk Prospect during the relevant time period.

Docket No. 13 at 4. Hess Bakken further argues that, even if had some general

obligation to pursue new leases, it was not required to obtain a minimum number of

leases nor was it required to pursue new leases during a particular time frame. *Id.*

Hess Bakken cites the use of the word "if" in the second sentence of the following

section of the AMI as an indication that it was not obligated to pursue new leases:

> During the term of the AMI, only [Hess Bakken] may proceed to lease or
> otherwise acquire interests within the AMI. If, during the term of the AMI,
> [Hess Bakken] should acquire any oil and gas lease, leasehold interest or
> mineral interest, [Hess Bakken] shall offer such interest to Coachman in the
> following proportions, [Hess Bakken] (90%), Coachman (10%), pursuant to
> that certain Participation Agreement dated October 8, 2009, by and between
> [Hess Bakken] and Coachman. Furthermore, for any oil and gas lease
> acquired by [Hess Bakken] in the AMI, [Hess Bakken] shall immediately
> notify Spring Creek and Gold Coast in writing of such acquisition and Spring
> Creek and Gold Coast shall be entitled to an overriding royalty interest . . . .
> for the Spring Creek [overriding royalty interest], Spring Creek and Gold
> Coast, or their affiliates shall not be entitled to acquire any interest or
> otherwise compete with [Hess Bakken] within the AMI.

Docket No. 3 at 27, ¶ 1.

Spring Creek does not identify a specific provision of the Agreement or the AMI

that requires Hess Bakken to pursue leases and to do so throughout the three-year

8

term of the AMI.  Docket No. 33.  Instead, Spring Creek argues that, reading the

Agreement and the AMI as a whole, it is clear that such an obligation was contemplated

by the parties–otherwise, many provisions of these contracts would be rendered

meaningless.  Docket No. 33 at 5.  For example, the AMI provides that Hess Bakken

"shall endeavor to retain Diamond Resources as a lease broker to acquire interests

within the AMI," but that if Hess Bakken is "unable to retain Diamond Resources, or if

for any reason [Hess Bakken] is unsatisfied with their performance, [Hess Bakken] may

select and retain a different lease broker in [Hess Bakken's] sole discretion."  Docket

No. 3 at 28, ¶ 3.[4]  Spring Creek further argues that the "use of the term 'if,' in the

context of the Agreement, is clearly an acknowledgment that neither party can

guarantee a land/mineral owner will sign a lease."  Docket No. 33 at 5.  Finally, Spring

Creek argues that, under the AMI, it gave up the right to pursue its own leases in the

Tomahawk Prospect in exchange for Hess Bakken's agreement to pursue such leases

and assign Spring Creek an interest in any leases it obtained.  *Id*.

Neither the Agreement nor the AMI, or both considered together, explicitly

obligates Hess Bakken to acquire new leases.  *See generally* Docket No. 3 at 12, 27.

Spring Creek is unable to point to any language in either agreement that creates such

an obligation.  The language in the AMI that refers to leasing is inconsistent with any

obligation for Hess to acquire new leases: "If, during the term of the AMI, [Hess] should

acquire any oil and gas lease. . . ."  Docket No. 3 at 27.  Rather than evidencing an

---

[4]This language is not rendered meaningless by interpreting the AMI in the way
Hess Bakken suggests.  Regardless of whether Hess Bakken had an obligation to
acquire new leases or not, this provision is simply a non-binding broker preference.

intent of the parties to require Hess to acquire additional leases, the AMI reflects an

agreement to define Hess Bakken's obligations in the event that it *did* acquire a new

lease.[5]  This interpretation, which is the only reasonable interpretation, does not render

any of the language of the AMI meaningless.  Spring Creek fails to state a breach of

contract claim based on Hess Bakken's failure to acquire new leases in the Tomahawk

Prospect.

### c.  Confidentiality Provision

Spring Creek alleges that Hess Bakken breached the confidentiality provision in

the AMI by "disclos[ing] the terms of the AMI to Statoil prior to entering into the

Hess/Statoil Agreement.  Accordingly, at the time Hess and Statoil entered into the

Hess/Statoil Agreement, Statoil was fully aware that Spring Creek was [] not actively

pursuing new leasehold interests within the Tomahawk Prospect."  Docket No. 3 at 5,

¶ 19.

The AMI provides that "[t]he terms of this Agreement are confidential and no

Party, nor any of its respective affiliates or representatives shall furnish this Agreement,

or disclose any of its contents, to any third party."  Docket No. 3 at 29, ¶ 5.

Hess Bakken's counter-arguments miss the point.  Spring Creek alleges that

Hess Bakken disclosed the terms of the AMI before Hess Bakken entered into an

agreement and thus before Statoil allegedly became Hess Bakken's assignee for the

---

[5]Spring Creek does not ask the Court to interpret the AMI to contain an implied "best efforts" clause.  While such clauses are commonly read into exclusive dealing contracts, see *Kolbe & Kolbe Health and Welfare Ben. Plan v. Med. Coll. of Wis., Inc.*, 742 F.3d 751, 754 (7th Cir. 2014) (noting that best efforts clauses are commonly implied in exclusive dealing contracts), the Court is unaware of any authority that supports implying such a clause in an Area of Mutual Interest agreement.

purpose of the AMI.  Docket No. 3 at 5, ¶19.  The fact that Spring Creek alleges that

Statoil subsequently became Hess Bakken's assignee does not contradict or undermine

this breach of contract claim.

Hess Bakken argues that Spring Creek waived any claim to confidentiality of the

AMI by disclosing the AMI and its terms to Statoil in September 2012.  Docket No. 13 at

5.  But Spring Creek alleges that Hess Bakken disclosed the confidential terms of the

AMI before entering into the Hess/Statoil Agreement in April 2010.  Docket No. 3 at 5,

¶¶ 18-19.  Spring Creek did not disclose the terms of the AMI until September 2012,

more than two years after Hess Bakken's alleged breach.  *Id.* at 7, ¶ 29.  "[I]t is a

condition of each party's remaining duties to render performances to be exchanged

under an exchange of promises that there be no uncured material failure by the other

party to render any such performance due at an earlier time."  Restatement (Second) of

Contracts § 237 (1981); *see also Colo. Interstate Gas Co. v. Chemco, Inc.*, 854 P.2d

1232, 1239 (Colo. 1993) (citing § 237); *Converse v. Zinke*, 635 P.2d 882, 887 (Colo.

1981) ("If one party has failed to perform the bargained for exchange, the other party

may be relieved of a duty to continue its own performance, where the failure is material

and unexcused.").  A party's material breach of a contract discharges a counter-party's

duty to perform, even if the counter-party is unaware of the breach, and gives rise to a

claim for damages.  Restatement (Second) of Contracts § 237 cmt. c.  "Whether a

breach of a contract is material, and therefore excuses further performance by the other

party, is a question of fact."  *Kaiser v. Market Square Discount Liquors, Inc.*, 992 P.2d

636, 640 (Colo. App. 1999).

Spring Creek alleges that it breached the confidentiality provision only after Hess

Bakken did so more than two years earlier.  Docket No. 3 at 7, ¶ 29.  The Court cannot

determine on a motion to dismiss that Hess Bakken's alleged breach was immaterial.

*See Kaiser*, 992 P.2d at 640.  Accordingly, the Court finds that Spring Creek has stated

a claim for breach of contract based on the allegation that Hess Bakken breached the

promise to keep the terms of the AMI confidential.

### d.  Failing to Honor Royalty Interests in Existing Leases

Hess Bakken argues that there are no "factual allegation[s] to support the theory

that [Hess Bakken] breached the AMI Agreement by 'failing to honor Spring Creek's

Override Interests in the Existing Leases.'"  Docket No. 13 at 6.

Spring Creek responds by citing paragraph 27 of the complaint, which alleges

that, "[t]o date, Statoil, as successor in interest to Hess, has at least in part been

honoring the terms of the Agreement, including the AMI, by paying Spring Creek its

Override Interests on a portion of the Existing Leases."  Docket No. 3 at 6, ¶ 27.  Spring

Creek also alleges that, "[n]otwithstanding the Hess/Statoil Agreement, and Hess'

agreement with Statoil to breach the Agreement, Hess remains subject to and

responsible for its obligations under the Agreement."  *Id*. at 7, ¶ 34.

"Unless the obligee agrees otherwise, neither delegation of performance nor a

contract to assume the duty made with the obligor by the person delegated discharges

any duty or liability of the delegating obligor."  Restatement (Second) of Contracts

§ 318; *see also Club Telluride Owners Ass'n, Inc. v. Mitchell*, 70 P.3d 502, 504 (Colo.

App. 2002) (citing the Restatement (Second) of Contracts for the principle that "[a]n

obligor may effectively delegate performance to another who is willing to perform the delegated duty, but the obligor remains liable as surety unless the obligee consents to the delegation.").

Spring Creek alleges that Statoil, as assignee of Hess Bakken's rights under the AMI, has been paying interest on only a "portion of the Existing Leases."  Docket No. 3 at 6, ¶ 27.  Hess Bakken does not argue that Spring Creek consented to any delegation of its obligations under the AMI.  The complaint alleges that Statoil has not fully performed on the contractual obligation to pay royalties on existing leases and that Hess Bakken is liable for this non-performance.  This is sufficient to state a claim for breach of contract.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

In Colorado, "every contract contains an implied duty of good faith and fair dealing." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995).  The duty to act in good faith applies when the parties, at the time of contract formation, defer a decision regarding certain terms of performance (such as quantity, price, or time) leaving one party with discretion to set such terms during the course of its performance.  *Id*.  Good faith performance under such circumstances entails "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party."  *Id*. (citation omitted).  "A party's justified expectations are violated if evidence indicates it would not have signed the contract had it known of the manner in which the party given discretion would exercise its discretion to determine open terms under a contract." *ADT Security Servs., Inc. v. Premier Home Protection, Inc.*, 181 P.3d 288, 293 (Colo. App. 2007).

The implied covenant cannot, however, be used to impose obligations that conflict with the express terms of the agreement or to "inject substantive terms into the contract."  *Id*.

Spring Creek alleges that Hess Bakken breached the implied covenant of good faith and fair dealing by "entering into an agreement that prohibited [Hess Bakken] from acquiring any new leases within the Tomahawk Prospect, failing to disclose those terms, and failing to make efforts to obtain new leases."  Docket No. 3 at 8-9, ¶ 47. Hess Bakken argues that Spring Creek is attempting to insert a "best efforts" clause into the AMI for which the parties did not bargain.  Docket No. 13 at 7.

As discussed above, the AMI only defines Hess Bakken's obligations in the event that it acquires new leases.  Docket No. 3 at 27.  It does not obligate Hess Bakken to acquire any additional leases, or to continue pursuing leases in perpetuity.

Spring Creek also alleges that Hess Bakken breached the implied covenant of good faith and fair dealing by failing to disclose the terms of the Hess/Statoil Agreement to Spring Creek.  Docket No. 3 at 8-9, ¶ 47.  But Spring Creek alleges no facts that suggest a justified expectation that Hess Bakken would disclose the terms of all future agreements that affected its interests in the Tomahawk Prospect.  Accordingly, Spring Creek has failed to state a claim for breach of the implied covenant of good faith and fair dealing.

### 3. Fraudulent Concealment

Spring Creek alleges that Hess Bakken breached its "duty to disclose to Spring Creek the fact that Hess was no longer acquiring new leases within the Tomahawk Prospect and that [it] had no intention of assigning Spring Creek its Override Interests in the New Leases" acquired by Statoil.  Docket No. 3 at 9, ¶ 57.  Spring Creek further

14

alleges that Hess Bakken fraudulently concealed this information in order to prevent Spring Creek from acquiring its own leases in the Tomahawk Prospect and that Spring Creek did in fact refrain from acquiring its own leases in reliance on its justified expectation that Hess Bakken was continuing to acquire leases. *Id.* at 10, ¶¶ 59-60. Hess Bakken argues that Spring Creek's fraudulent concealment claim is barred by the economic loss doctrine. Docket No. 13 at 8-9.

> The tort of fraudulent concealment has five elements:
>
> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*BP America Production Co. v. Patterson*, 263 P.3d 103, 109 (Colo. 2011) (citation omitted).

The economic loss doctrine is a judicially-created rule under which "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (citing *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1259-62 (Colo. 2000)). A duty is considered independent of a contract when two conditions are satisfied: "[f]irst, the duty must arise from a source other than the relevant contract"; and "[s]econd, the duty must not be a duty also imposed by the contract." *Id.* at 962.

The Colorado Supreme Court has identified three policy reasons to support the application of the economic loss rule between commercial parties: (1) maintaining the

distinction between contract and tort law; (2) enforcing expectancy interests of the parties so that they can reliably allocate risks and costs during bargaining; and (3) encouraging parties to build cost considerations into contracts since they will not recover economic damages in tort. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004).

A claim for fraudulent concealment sounds in tort. *Barfield v. Hall Realty, Inc.*, 232 P.3d 286, 292 (Colo. App. 2010). In order to recover on this claim, Spring Creek must show that Hess Bakken had a duty to Spring Creek to disclose certain information about its agreement with Statoil that is independent of the Agreement and the AMI. *See Haynes Trane*, 573 F.3d at 962. Spring Creek argues that Hess Bakken had an independent duty because it was "in a position of superior knowledge [vis-à-vis Spring Creek] and used that knowledge to [its] advantage." Docket No. 33 at 11.

Spring Creek's reasoning is circular. If a duty to disclose arose whenever a contractual party has superior information that it does not disclose, then there would be no need for courts to determine whether a party had an independent duty to disclose. Such a holding would be equivalent to a blanket finding that the economic loss doctrine does not bar fraudulent concealment claims. Colorado courts have resisted articulating such a broad rule. Instead, they have held that an alleged misrepresentation that relates to the *ongoing* performance of a contract and occurs after the parties have "bargained for the allocation of risks, duties, and remedies" is barred by the economic loss rule. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 75 (Colo. 2004); *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 541 (Colo. App. 2011)

16

(negligent misrepresentation claim barred by economic loss doctrine where defendant falsely represented that it was performing a contractual obligation); *Rees v. Unleaded Software, Inc.*, --- P.3d ----, 2013 WL 6354532, at *3-4 (Colo. App. Dec. 5, 2013) (fraudulent misrepresentation claim based on party's failure to perform contractual duties was barred by the economic loss doctrine because parties were "sophisticated business entities" that "had the ability to account for the risk of nonperformance").

Furthermore, although a relationship of trust and confidence can arise when one party occupies a position superior to the other, *see First Nat'l Bank of Meeker v. Theos*, 794 P.2d 1055, 1060-61 (Colo. App. 1990), "superiority" in this context inheres in the structure of the parties' relationship. *See United Fire & Cas. Co. v. Nissan Motor Corp. in U.S.A.*, 433 P.2d 769, 770-71 (Colo. 1967) ("A confidential relationship has been defined as one 'between two persons when it is established that one occupies a superior position over the other–intellectually, physically, governmentally or morally–with the opportunity to use that superiority to the other's disadvantage."). Spring Creek does not allege that Hess Bakken occupied a superior *position* "intellectually, physically, governmentally or morally," *see id*., only that it had superior *information* that it did not disclose to Spring Creek.

Spring Creek does not allege misrepresentations or omissions on Hess Bakken's part that fraudulently induced Spring Creek to enter into a contract, but rather alleges that Hess Bakken fraudulently concealed the fact that it was not performing its duties under an existing contract. Docket No. 3 at 9, ¶ 56. This claim is barred by the economic loss doctrine because the alleged misrepresentation took place while the

17

parties were performing the contract and pertained to Hess Bakken's alleged breach of the contract, not to the circumstances that initially induced Spring Creek to enter into the contract.  *See BRW*, 99 P.3d at 75; *A Good Time Rental*, 259 P.3d at 541.

### B.  Claims Against Statoil

As a threshold matter, in addressing plaintiff's claims against Statoil, the Court must decide which state's laws govern.  In a diversity case, a federal court must apply the choice of law rules of the forum state.  *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941); *Tucker v. R.A. Hanson Co., Inc.*, 956 F.2d 215, 217 (10th Cir. 1992). Statoil argues for the first time in its reply that North Dakota law applies to Spring Creek's allegations against it because North Dakota is the *situs* of the real property at issue.  Docket No. 34 at 1-2.  In a surreply filed to address choice of law issues, Spring Creek argues that its claims do not relate directly to leases in property, but rather to the performance of obligations under the Agreement as well as the circumstances surrounding the agreement between Hess Bakken and Statoil.  Docket No. 47 at 3.

Spring Creek is correct that North Dakota law does not apply to all of its claims simply because the real property at issue is located in that state.  The cases cited by Statoil stand only for the proposition that claims involving "the rights and titles" to real property are governed by the law of the *situs*.  *Wolf v. Burke*, 32 P. 427, 429 (Colo. 1893); *see also Clarke v. Clarke*, 178 U.S. 186, 191 (1900) ("It is a principle firmly established that to the law of the state in which the land is situated we must look for the rules which govern its *descent, alienation, and transfer*") (emphasis added).  Spring Creek's breach of contract and tort claims do not involve rights and title to real property.

Accordingly, the Court looks to Colorado's choice of law rules to determine which law governs Spring Creek's respective claims.

As Spring Creek points out in its surreply, the AMI contains a choice of law provision that provides that Colorado law governs the agreement.  Docket No. 3 at 29, ¶ 7.  For contract claims, Colorado courts apply the law chosen by the parties "unless there is no reasonable basis for their choice or unless applying the law of the state so chosen would be contrary to the fundamental policy of a state whose law would otherwise govern."  *Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 113 (Colo. App. 1994) (citing Restatement (Second) of Conflict of Laws § 187 (1971)).  Here, there was a reasonable basis for selecting Colorado law because Spring Creek is a Colorado limited liability company, notices under the AMI are directed to each of the signatories in Colorado, and the Agreement appears to have been negotiated in Colorado. Accordingly, the Court will apply Colorado law to Spring Creek's breach of contract claim.

With respect to its tort claims, Spring Creek argues first that the Court lacks sufficient facts to determine choice of law on a motion to dismiss, Docket No. 47 at 4-5 (citing *Susquehanna Inv. Group v. Amgen Boulder, Inc.*, 918 F. Supp. 326, 329 (D. Colo. 1996)), and, in the alternative, that Colorado law should apply based on application of the "most significant relationship" test.  *Id.* at 6.  Because neither party has demonstrated a substantial difference between the laws of Colorado and North

Dakota with respect to Spring Creek's tort claims, it is unnecessary to decide which

state's law should apply to those claims at this time.[6]

### 1. Breach of Contract

Spring Creek alleges that Statoil, as assignee of the AMI, breached the AMI by

> 1) failing to disclose to Spring Creek all leases it acquired within the Tomahawk Prospect, 2) failing to assign to Spring Creek its Override Interests in the New Leases acquired by Statoil, and 3) failing to honor Spring Creek's Override Interests on all of the Existing Leases.

Docket No. 3 at 8, ¶ 41.  Statoil contends that Spring Creek fails to state a claim upon

which relief can be granted because (1) it is not an assignee of the AMI and thus is not

liable for any of the obligations that arise under it, and (2) Spring Creek's claims with

respect to existing leases are too conclusory to state a claim for breach of contract.

Docket No. 34 at 3-5.

### a. Assignment of the AMI

Because the obligations to acquire new leases in the Tomahawk Prospect and to

notify Spring Creek of any newly-acquired leases arise from the AMI, Docket No. 3 at 4,

¶ 14, and because Statoil is not a signatory to the AMI, Spring Creek's first two breach

of contract theories against Statoil–failure to disclose all leases acquired within the

Tomahawk Prospect and failure to assign override interests in newly-acquired

---

[6] *See Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 320-21 (10th Cir. 1997) (finding it unnecessary to determine choice of law issue where state law and federal common law were substantially similar); *see also Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1337 (D. Kan. 2000) (finding it unnecessary to determine choice of law matter on a motion to dismiss where "the [c]ourt discerns no material difference between the applicable substantive law").

leases–depend on Statoil being an assignee of that agreement.  Section 328 of the

Restatement (Second) of Contracts provides:

> (1) Unless the language or the circumstances indicate the contrary, as in an
> assignment for security, an assignment of "the contract" or of "all my rights under
> the contract" or an assignment in similar general terms is an assignment of the
> assignor's rights and a delegation of his unperformed duties under the contract.
>
> (2) Unless the language or the circumstances indicate the contrary, the
> acceptance by an assignee of such an assignment operates as a promise to the
> assignor to perform the assignor's unperformed duties, and the obligor of the
> assigned rights is an intended beneficiary of the promise.

Statoil argues that the Bill of Sale contains no language purporting to assign the AMI.

Docket No. 34 at 3-4.  In response, Spring Creek argues that "other well-pled

allegations in the Complaint" explain that "the Hess/Statoil *Bill of Sale* is one part of the

larger Hess/Statoil *Agreement*, portions of which had not been disclosed to Spring

Creek, wherein Hess assigned all of its rights and obligations under the Agreement to

Statoil."  Docket No. 47 at 11-12 (citing Docket No. 3 at 6, ¶¶ 23-26) (emphasis in

original).

The Court finds that Spring Creek has plausibly pled that Statoil is the Assignee

of the Agreement and AMI.  Although Spring Creek has not attached or alleged the

contents of the entire Hess/Statoil Agreement, the complaint contains "direct or

inferential allegations respecting all the material elements necessary to sustain a

recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alteration and

quotation omitted).  While the Bill of Sale contains no language that references the AMI,

Spring Creek alleged that the Bill of Sale was only "part of th[e] transaction" between

Hess Bakken and Statoil.  Docket No. 3 at 6, ¶ 23.  Spring Creek further alleged that

"[t]hrough the Hess/Statoil Agreement, Statoil became the successor and/or assignee of Hess for the Agreement.  *Id.* at 5, ¶ 18.

### b.  Failing to Disclose New Leases

Spring Creek alleges no facts that support a breach of contract theory based on failure to disclose new leases.  As discussed above in regard to Spring Creek's breach of contract claims against Hess Bakken, the complaint alleges only that Statoil has not assigned override interests for the new leases to Spring Creek, not that it has failed to disclose the leases it has acquired.  *See* Docket No. 3 at 6, ¶ 28.  Accordingly, Spring Creek fails to state a claim for breach of contract against Statoil with respect to alleged failure to disclose new leases.

### c.  Failing to Assign Override Interests In New Leases

Statoil does not contest that if it were an assignee of the AMI, it would be obligated to satisfy Hess Bakken's contractual obligation to assign override interests in newly-acquired leases to Spring Creek.  *See generally* Docket No. 34 at 3-4.  Because Spring Creek has sufficiently alleged that Statoil is an assignee of the Agreement (including the AMI), Spring Creek has also adequately pled that Statoil breached the Agreement by failing to assign override interests in its newly-acquired leases. Specifically, Spring Creek alleged that, after entering into the Hess/Statoil agreement, Statoil "has acquired numerous new oil and gas leasehold interests within the Tomahawk Prospect" and that "[n]either . . . Statoil, or Hess . . . have assigned any Override Interests to Spring Creek, as required by the AMI, for the New Leases."

22

Docket No. 3 at 6, ¶ 28.  These allegations are sufficient to state a claim for breach of contract.

### d.  Failing to Honor Royalty Interests in Existing Leases

Spring Creek alleges that Statoil failed to honor Spring Creek's override interests in all of the existing leases.  Docket No. 3 at 8, ¶ 41.  Statoil argues that Spring Creek did not plead "what agreement Statoil breached" in relation to those leases, and provided only "conclusory allegations concerning an alleged breach or resulting damages."  Docket No. 34 at 5-6.[7]  While Spring Creek's allegations with respect to existing leases are cursory, the Court finds that they are plausible and sufficient to put Statoil on notice of its claim.  Spring Creek has alleged that Statoil took Hess's leasehold interests subject to Spring Creek's overriding royalty interests.  Docket no. 3 at 6, ¶ 24.  Spring Creek further alleged that Statoil failed to honor all of those interests. *Id.* at 8, ¶ 41.  Thus, Spring Creek has stated a claim for failure to honor royalty interests in existing leases.

### 2.    Tortious Interference with Contract

Spring Creek alleges that Statoil interfered with the Agreement and AMI by (1) "induc[ing] Hess to enter into an agreement that prohibited Hess from acquiring any new oil and gas leases in the Tomahawk Prospect," Docket No. 3 at 9, ¶ 50; (2) insisting that Hess not disclose the terms of the Hess/Statoil Agreement to Spring Creek, *id.* ¶ 52; and (3) intentionally structuring its agreements with Hess so that it could

---

[7]Statoil raises this argument for the first time in its reply brief.  Although parties should generally refrain from raising new arguments in support of dismissal in their reply papers, the Court finds that Spring Creek had sufficient opportunity to respond in its surreply and will consider Statoil's argument.

23

claim it was not obligated to honor the terms of the AMI. *Id.* ¶ 53. Spring Creek further

alleges that Statoil was aware of the terms of the Agreement and knew that Hess

Bakken would be in breach of the Agreement if it entered into the Hess/Statoil

Agreement. *Id.* ¶ 51.

> In Colorado:
>
> "[o]ne who *intentionally* and *improperly* interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

*Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.*, 690 P.2d

207, 210 (Colo. 1984) (quoting Restatement (Second) of Torts § 766 (1977)) (emphasis

in original).

Statoil notes that protection of contractual relations is not absolute and must be

"balanced against other interests including the ability to engage in business and

compete with others." Docket No. 7 at 12. While there is a degree of protection for

business competition, where a contract is not terminable at will "the parties have a legal

right to the future performance of the contract, and the interests of the parties to the

contract outweigh the interests in competition." *Memorial Gardens*, 690 P.2d at 211.

Thus, interference with a contract not terminable at will is considered "improper." *Id.*

Statoil does not argue that the Agreement was terminable at will, and in fact argues the

opposite. In opposing Spring Creek's claim for breach of contract, Statoil

acknowledges that the AMI was for a term of three years. Docket No. 7 at 10; *see also*

Docket No. 3 at 27 (providing that "[t]he term of the AMI shall be three (3) years").

Because the AMI was for a defined term and thus does not appear to be terminable at will, interfering with the AMI could be improper under the balancing test applied by Colorado courts.

Here, Spring Creek has failed to state a claim for tortious interference with contractual relations.  As discussed above, the AMI cannot reasonably be interpreted to require Hess Bakken to acquire new leases.  As such, Statoil correctly argues that it cannot have interfered with a contractual obligation that did not exist.  Docket No. 7 at 12.  With respect to the claim that Statoil caused Hess Bakken to keep the terms of the Hess/Statoil Agreement secret, Spring Creek identifies no provision in the Agreement that Hess Bakken breached as a result of Statoil's alleged actions.  Likewise, the claim that Statoil is liable for tortious interference with contractual relations for structuring the Hess/Statoil Agreement so that it would have a plausible claim that it was not obligated to assign its override interests to Spring Creek fails to identify how this conduct caused a breach on Hess Bakken's part.  Under well-established law, parties to an assignment agreement are free to apportion rights and obligations under the assigned contract however they please.  *See* Restatement (Second) of Contracts, § 328 (1981) (providing that an assignment of the whole contract operates as a delegation of unperformed duties under that contract "*[u]nless the language or the circumstances indicate the contrary*") (emphasis added).[8]

---

[8]Statoil argues in its reply that North Dakota law requires a showing that interference with contractual relations was not "justified."  Docket No. 34 at 6.  The Court finds that the laws of the two states are substantially similar, and the slight differences in the articulation of the elements of tortious interference with contractual relations between North Dakota and Colorado do not alter its analysis.  In North Dakota, actions are justified if they are done for "legitimate business concerns and did not

### 3.  Fraudulent Concealment

Spring Creek alleges that Statoil breached a "duty to disclose to Spring Creek the fact that Hess [Bakken] was no longer acquiring new leases within the Tomahawk Prospect and that [it] had no intention of assigning Spring Creek its Override Interests in the New Leases" acquired by Statoil.  Docket No. 3 at 9, ¶ 57.  Statoil argues that it had no duty to disclose this information to Spring Creek.  Docket No. 7 at 13.

Colorado courts look to the Restatement to determine whether "the circumstances of a particular case give rise to a duty to disclose in 'equity or good conscience.'" *Mallon Oil Co. v. Bowen/Edwards Associates, Inc.*, 965 P.2d 105, 111 (Colo. 1998) (citing Restatement (Second) of Torts § 551 (1977)).  For a claim of fraudulent concealment, the Restatement contemplates a duty to disclose between parties to a transaction, and then only before the transaction is completed.  *See* Restatement (Second) of Torts §§ 551(1) ("[o]ne who fails to disclose to another a fact that he knows may justifiably induce the other *to act or refrain from acting in a business transaction*" may be liable) (emphasis added); 551(2) ("[o]ne party *to a business transaction* is under a duty to exercise reasonable care to disclose *to the other before the transaction is consummated*...") (emphasis added).  Spring Creek alleges that Statoil had a duty to disclose the facts of the Hess/Statoil agreement to Spring Creek, a non-party to the alleged agreement.  Docket No. 3 at 9, ¶ 57.  Spring Creek cites no

---

maliciously seek to damage the plaintiff." *Thimjon Farms P'ship v. First Int'l. Bank & Trust*, 837 N.W.2d 327, 334 (N.D. 2013).  In Colorado, courts are directed to "examine various factors," including the "nature of the actor's conduct" and the "actor's motive." *Memorial Gardens*, 690 P.2d at 210, n.7 (citing Restatement (Second) of Torts §§ 766-767 (1977).

case, and the Court is aware of none, that has found a duty to disclose the terms of a contract to non-parties who may be affected by the agreement. *See Plateau Supply Co. v. Bison Meadows Corp.*, 500 P.2d 162, 165 (Colo. App. 1972) (no liability for failure to disclose in the absence of a "confidential relationship" between the parties). Because it alleges no facts that support a duty to disclose the terms of the Hess/Statoil Agreement, Spring Creek has failed to state a claim for fraudulent concealment against Statoil.

### C.  Civil Conspiracy Against Hess Bakken And Statoil

Spring Creek alleges that Hess Bakken and Statoil engaged in an unlawful scheme to "commit the tortious acts identified in th[e] Complaint."  Docket No. 3 at 10, ¶ 63.  Defendants argue that Spring Creek cannot prove any underlying tort claim, and therefore the derivative claim of civil conspiracy must also fail.  Docket No. 7 at 14; Docket No. 13 at 9.

The elements of a civil conspiracy are: "(1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.'" *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989) (quoting *More v. Johnson*, 568 P.2d 437, 439-40 (Colo. 1977)); *see Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006).

Because Spring Creek failed to state a claim against either defendant for fraudulent concealment and has failed to state a claim against Statoil for tortious interference with contractual relations, it cannot maintain a derivative cause of action for

civil conspiracy with respect to its underlying tort claims.  *See Vickery v. Evelyn V. Trumble Living Trust*, 277 P.3d 864, 871 (Colo. App. 2011) (if "the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself") (citation and quotation omitted).

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants Statoil and Hess Bakken's Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket Nos. 7 and 13] are each **GRANTED** in part and **DENIED** in part.  It is further

**ORDERED** that Plaintiff's third, fourth, fifth and sixth claims for relief are dismissed with prejudice.  It is further

**ORDERED** that Plaintiff's first claim for relief is dismissed with prejudice with regard to the theories that Hess Bakken failed to disclose leases acquired after April 2010 and failed to acquire new leases.  Plaintiff may proceed with his first claim for relief based on Hess Bakken's alleged breach of the confidentiality provision and failure to honor royalty interests in existing leases.  It is further

**ORDERED** that Plaintiff's second claim for relief is dismissed with prejudice with regard to failure to disclose all leases acquired by Statoil.  Plaintiff may proceed with its second claim for relief based on Statoil's alleged failure to assign override interests in new leases to Spring Creek and failure to honor royalty interests in existing leases.

DATED September 5, 2014.

BY THE COURT:


  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge