IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-00134-PAB-KMT

SPRING CREEK EXPLORATION & PRODUCTION COMPANY, LLC, and
GOLD COAST ENERGY, LLC,

    Plaintiffs,

v.

HESS BAKKEN INVESTMENT II, LLC, f/k/a TRZ ENERGY LLC, and
STATOIL OIL & GAS LP, f/k/a BRIGHAM OIL & GAS LP,

    Defendants.

---

**ORDER**

---

This matter is before the Court on the Motion for Partial Summary Judgment as to Working Interest Damages [Docket No. 81] filed by defendant Hess Bakken Investment II, LLC ("Hess Bakken"). The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

**I. BACKGROUND**[1]

On October 8, 2009, Hess Bakken acquired approximately 5,409.63 net acres of oil and gas leasehold in Williams County, North Dakota known as the "Tomahawk Prospect" from plaintiffs Spring Creek Exploration & Production Company, LLC ("Spring Creek") and Gold Coast Energy, LLC ("Gold Coast"). Docket No. 81 at 2, Statement of Undisputed Material Fact ("SUMF") 1.[2] Hess Bakken paid $1,200 per acre for the

---

[1] The following facts are undisputed unless otherwise indicated.

[2] At the time of the transaction, Hess Bakken was under different ownership and was known as TRZ Energy LLC. Docket No. 81 at 2, SUMF 1. For simplicity's sake, the

interests it acquired in the Tomahawk Prospect. *Id.* As part of the transaction, plaintiffs and Hess Bakken entered into an Area of Mutual Interest Agreement (the "Agreement") that established an area of mutual interest ("AMI") around the Tomahawk Prospect for a three-year term. *Id.* SUMF 2. The Agreement states that "for any oil and gas lease acquired by [Hess Bakken] in the AMI, . . . Spring Creek and Gold Coast shall be entitled to an overriding royalty interest in such lease . . . provided that in no event shall such overriding royalty be greater than 3% (the 'Spring Creek ORRI'). . . . Except for the Spring Creek ORRI, Spring Creek and Gold Coast, or their affiliates shall not be entitled to acquire any interest or otherwise compete with [Hess Bakken] within the AMI." *Id.* SUMF 3.³ According to William Coleman, Spring Creek's president at the time the Agreement was signed, the intent of the agreement was that Spring Creek would not be entitled to acquire any working interest or otherwise to compete with Hess Bakken within the AMI. Docket No. 81-2 at 10, pp. 211:7-212:21. Additionally, the Agreement contains a confidentiality agreement that states: "[t]he terms of this Agreement are confidential and neither [Hess Bakken] nor [plaintiffs], nor any of their respective affiliates or representatives shall furnish this Agreement, or disclose any of its contents, to any third party." Docket No. 81-1 at 6, ¶ 6.

---

Court will treat any reference to TRZ Energy LLC in the record as referring to Hess Bakken.

³An overriding royalty is a "share of either production or revenue from production (free of the costs of production) carved out of a lessee's interest under an oil-and-gas lease." Black's Law Dictionary 1839 (9th ed. 2009).

2

At some point after entering into the Agreement, Hess Bakken sold the Tomahawk Prospect to defendant Statoil Oil & Gas, LP ("Statoil"), then known as Brigham Oil & Gas, LP, as part of a settlement of Statoil's claims against Hess Bakken concerning an unrelated transaction. Docket No. 81 at 2-3, SUMF 5; Docket No. 95 at 11, ¶ 23.[4] As part of finalizing the sale of its leases acquired in the Tomahawk Prospect, Hess Bakken disclosed the terms of the Agreement to Statoil, which plaintiffs state breached the Agreement's confidentiality provision. Docket No. 95 at 11-12, ¶ 26. After Statoil became aware of the terms of the Agreement, Statoil revised its agreement with Hess Bakken to attempt to exclude Hess Bakken's obligations under the Agreement. Docket No. 95 at 13, ¶ 33. Plaintiffs state that the resulting settlement agreement between Hess Bakken and Statoil provided that Statoil would no longer honor plaintiffs' overriding royalty interests. *Id.* ¶ 36(a).

In the operative complaint, plaintiffs state a claim for relief for breach of contract against Hess Bakken based on breach of the confidentiality provision in the Agreement and failing to honor the Spring Creek ORRI. Docket No. 80 at 8-9, ¶¶ 32-37.[5]

---

[4] Plaintiffs state that they deny Hess Bakken's SUMF 5, Docket No. 95 at 5, ¶ 5, but do not provide a "**specific reference** to the material in the record supporting the denial" as required by the Court's practice standards. *See* Practice Standards (Civil Cases), Judge Philip A. Brimmer § III.F.3.b.iv (emphasis in original).

[5] The amended complaint also purports to state claims for relief against Hess Bakken for breach of the implied covenant of good faith and fair dealing, fraudulent concealment, civil conspiracy, and breach of contract on the theories that Hess Bakken failed to disclose all leases it acquired within the Tomahawk Prospect and failed to acquire new leases within the Tomahawk Prospect during the entire period of the AMI. *See* Docket No. 80 at 9-13, ¶¶ 36, 43-68. The Court dismissed each of these claims with prejudice in an order dated September 5, 2014. *See* Docket No. 48. Plaintiffs were permitted to file their amended complaint in order to allow Gold Coast to intervene. *See* Docket No.

Plaintiffs have two alternative theories for their damages: first, to be put in as good a position as plaintiffs would have been in had the contract been performed, largely through the recovery of lost overriding royalty interests; second, reliance damages for the value of the lost opportunity to acquire leases in the AMI area from the date of Hess Bakken's breach until the expiration of the Agreement. Docket No. 95 at 3-4.[6] Consistent with these two theories of damages, plaintiffs' damages experts, Rick Chamberlain and Adrian Reed, proffered two sets of damages calculations. The first set of damages calculations, based on the lost value of the overriding royalty interests to which plaintiffs claim they were entitled, estimates plaintiffs' damages between $24.2 million and $59.3 million. Docket No. 82-1 at 4.[7] The second set of damages calculations, which is at issue here, is based on the value of plaintiffs' "potential working interest in leases within the AMI area had [plaintiffs] been free to compete."[8] *Id.* Mr.

---

79 (granting Gold Coast's unopposed motion to intervene). In seeking intervention, Gold Coast agreed to be bound by "all that has transpired with respect to Spring Creek in this action to date," including the Court's September 5, 2014 order. Docket No. 77 at 3, ¶ 2. Because plaintiffs did not seek, and were not granted, leave to re-allege claims that have been dismissed with prejudice, plaintiffs' third, fourth, fifth, and sixth claims for relief, as well as the portion of plaintiffs' first claim for relief that alleges previously-dismissed breach of contract theories, will be stricken.

[6] In an interrogatory response, plaintiffs state that they were damaged by Hess Bakken's alleged breach of the confidentiality provision in the Agreement by "the lost opportunity to either require [Statoil] to expressly acknowledge that by acquiring the Tomahawk leases it became an assignee of the AMI [Agreement] and/or the lost opportunity to seek and receive a waiver of the non-compete provision in the AMI [Agreement]." Docket No. 81 at 3-4; Docket No. 81-5 at 5-6.

[7] These experts refer to plaintiffs as "Zavanna." *See* Docket No. 82-1 at 4. Spring Creek merged into Zavanna sometime in 2013 or 2014. Docket No. 81-2 at 4, p. 71:3-10.

[8] As described by Hess Bakken's expert, John Lowe, the term "working interest" refers to the right to "work" leased property to find, develop, and produce minerals. Docket No.

Chamberlain and Mr. Reed estimate these "working interest" damages between $182 million and $403 million. *Id.* Hess Bakken moves for partial summary judgment on the ground that plaintiffs' "lost opportunity" theory of damages is improper because plaintiffs, in the Agreement, disclaimed any expectation of receiving working interests within the AMI.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks

---

81-6 at 6, ¶ 8.

omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

### III. ANALYSIS

The only question before the Court is whether, under Colorado law, plaintiffs are entitled to present their lost opportunity theory of damages to the jury.[9] Hess Bakken argues that plaintiffs' lost opportunity theory is legally improper because (1) the Agreement entitled plaintiff only to payment of overriding royalty interests, and (2) plaintiffs expressly disclaimed the right to acquire any working interests in the AMI during the Agreement's three-year term. Docket No. 81 at 6.

---

[9]The Agreement provides "any arbitration or dispute resolution conducted pursuant" to the agreement "shall be construed in accordance with, and governed by, the laws of the State of Colorado." Docket No. 81-1 at 31, § 7. Hess Bakken states that the Agreement's choice of law provision governs. Docket No. 81 at 5, n.6. Plaintiffs do not suggest otherwise. As a result, the Court will apply Colorado law.

Plaintiffs' lost opportunity theory relies, in significant part, on Section 344 of the Restatement (Second) of Contracts, entitled "Purposes of Remedies," which states that contract remedies strive to protect

> one or more of the following interests of a promisee:
>
> (a) his "expectation interest," which is his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed,
>
> (b) his "reliance interest," which is his interest in being reimbursed for loss caused by reliance on the contract by being put in as good a position as he would have been in had the contract not been made, or
>
> (c) his "restitution interest," which is his interest in having restored to him any benefit that he has conferred on the other party.

Restatement (Second) of Contracts, § 344 (1981). Regarding the reliance interest, comment a to § 344 states: "[t]he promisee may have changed his position in reliance on the contract by, for example, incurring expenses in preparing to perform, in performing, or in foregoing opportunities to make other contracts." *Id.*, cmt. a. In that case, "the court may recognize a claim based on [the party's] reliance rather than on his expectation" by "attempting to put [the party] back in the position in which he would have been had the contract not been made." *Id.* Plaintiffs focus on the last form of reliance mentioned in comment a, "foregoing opportunities to make other contracts."

Plaintiffs argue that they are entitled to recover lost opportunity damages because, had the Agreement not been made, plaintiffs would have been "free to continue acquiring valuable leases in the AMI area." Docket No. 95 at 3. Accordingly, plaintiffs state that they should be allowed to present evidence concerning the value of the lost opportunity to acquire such leases from the time of Hess Bakken's breach. *Id.*

7

at 4. Plaintiffs' lost opportunity theory is predicated on the idea that, had they not entered into the Agreement (or had they rescinded the Agreement at the time of Hess Bakken's purported breach), plaintiffs would have entered into significantly more lucrative arrangements. Plaintiffs estimate that they suffered "working interest" damages between $182 and $403 million, with an expected value of $271 million. Docket No. 82-1 at 4. By contrast, plaintiffs' experts value their overriding royalty interests – the alternative "benefit of the bargain" theory – between $24.2 million and $59.3 million, with an expected value of $38.9 million. *Id.* Comparing the "expected value" of the two theories of damages calculation, plaintiffs state that their working interest damages are nearly seven times the value of their overriding royalty interests. *Id.*[10]

The parties have not identified any Colorado case addressing the circumstances that justify recovery of reliance damages. Without a guiding opinion from Colorado, the Court must predict what the Colorado Supreme Court would do if faced with the issue. *Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139, 1142 (10th Cir. 2008); *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) (noting that, when the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court and, if no such rulings exist, must endeavor to predict how that high

---

[10]Hess Bakken characterizes plaintiffs' working interest damages as exceeding their overriding royalty interests "by a factor of twenty." Docket No. 109 at 1 (emphasis in original). It is unclear how Hess Bakken arrived at this twenty-fold difference. Even the high range of plaintiffs' estimated working interest damages ($403 million) is not twenty times more than plaintiffs' low estimate of their overriding royalty interests ($24.2 million). *See* Docket No. 82-1 at 4.

court would rule). Other jurisdictions that follow the Restatement generally limit recovery of reliance damages to circumstances where expectation damages are difficult or impossible to prove with certainty. *See, e.g.*, *Brennan v. Carvel Corp.*, 929 F. 2d 801, 811 (1st Cir. 1991) (under Massachusetts law, "[d]amages based on the injured party's reliance interest are often granted when the party's damages based on lost expectations are uncertain or cannot be measured") (citing Restatement (Second) of Contracts § 349, cmt. a (1981)); *Speakman v. Allmerica Fin. Life Ins. & Annuity Co.*, 367 F. Supp. 2d 122, 138 n.28 (D. Mass. 2005) (noting that reliance damages may be appropriate where "expectancy damages are too uncertain to measure"); *Reimer v. Badger Wholesale Co., Inc.*, 433 N.W.2d 592, 594 (Wisc. App. 1988) ("reliance damages are particularly appropriate where proof of the expectation interest, i.e., profit, is uncertain"). Additionally, the Restatement's comments on reliance damages limit their application to circumstances where either (a) "profit [is] uncertain," or (b) where, as in an option contract, a modification of an ongoing contract, or a case of promissory estoppel, "a promise is enforceable because it has induced action or forbearance." Restatement (Second) of Contracts § 349, cmts. a, b (1981) (citing Restatement (Second) of Contracts §§ 87, 89, 90, 139 (1981)).

Given its acknowledgment in *Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 251 (Colo. 2003), that expectation damages are the "traditional" contract remedy under Colorado law, the Colorado Supreme Court would likely limit the availability of reliance damages to circumstances where expectation damages are uncertain or impossible to calculate. Plaintiffs offer neither evidence nor argument that their

expectation damages would be difficult to calculate or would otherwise provide inadequate compensation for the alleged breach.  This is unsurprising, given that plaintiffs' experts estimate those very damages in the same document that contains their working interest damages estimate.

If reliance damages were proper in this case, plaintiffs would nonetheless be limited in offering proof of damages based on the value of working interests plaintiffs might have acquired but for the Agreement.  Plaintiffs' lost opportunity theory, if proven at trial, would result in a potential recovery far beyond the benefit of the bargain that plaintiffs expected in entering into the Agreement.  Allowing reliance damages in excess of the parties' expectation interest "might be justified if the reliance claim is properly regarded as a tort claim . . . .  But if the reliance claim is to be justified as a contract claim, then a recovery that makes the plaintiff better off by reason of breach seems wrong[.]"  Dan B. Dobbs, Law of Remedies § 12.3(2) (2d ed. 1993); *see also Doering Equip. Co. v. John Deere Co. – a Div. of Deere & Co.*, 815 N.E. 2d 234, 240 (Mass. App. 2004) (noting that permitting losses greater than the benefit of the bargain "would violate the fundamental principle first articulated by Professor Fuller and thereafter adopted by Judge Learned Hand . . ., the Restatement (Second) of Contracts, and this court" that "we will not . . . knowingly put the plaintiff in a better position than . . . had the contract been fully performed") (citation and quotation omitted).

Colorado law is consistent with the above-cited authorities, namely that, absent exceptional circumstances, compensation under damages theories other than expectancy interest is limited by the value of the contract.  *See Johnson v. Bovee*, 574

P. 2d 513, 514 (Colo. App. 1978) ("We believe using the contract price as a ceiling on restitution is the better-reasoned resolution of this question"); *H.M.O. Sys., Inc. v. Choicecare Health Servs., Inc.*, 665 P.2d 635, 639 (Colo. App. 1983) ("if recovery [for breach of contract] also includes reasonable expenditures in preparation for performance or in performance, this amount is limited by the contract price") (citing Restatement (Second) of Contracts § 349, cmt. a (1981).[11]  Plaintiffs seek to convince a jury that, unfettered by the Agreement, they would have realized far greater profits than they contracted for.  Neither the Restatement nor Colorado law contemplates a scenario where, as here, the value of a lost opportunity would exceed the expectation interest multiple times over.

The cases that plaintiffs cite that recognize the lost opportunity damages theory do not compel a contrary result.  In *The Superlative Group, Inc. v. WIHO, L.L.C.*, 2014 WL 1385533 (D. Kan. Apr. 9, 2014), the court held that, under Kansas law, a plaintiff could recover lost opportunity reliance damages under a promissory estoppel theory. *Id.* at *4.  The plaintiff, which received commissions for leasing suites in a county-owned sports arena, alleged that the defendant, an arena tenant, promised plaintiff a commission on season ticket sales, which induced plaintiff to require the purchase of

---

[11]The Restatement adopts a similar approach to reliance damages, including damages for lost opportunity.  Section 349 of the Restatement provides that an injured party may prefer to pursue reliance rather than expectation damages "if he cannot prove his profit with reasonable certainty" and that "recovery for expenditures" under a reliance interest theory "may not exceed the full contract price."  Restatement (Second) of Contracts § 349, cmt. a (1981).  Likewise, the Restatement states that damages based on loss of "opportunities to make other contracts," like other reliance damages, "may be equal to the expectation interest" but are "ordinarily smaller because [they do] not include the injured party's lost profit."  *Id.* § 344, cmt. a.

season tickets as a condition of leasing suites. *Id.* at *2. Defendant then apparently refused to pay a commission on season ticket sales. Plaintiff's breach of contract claim sought the value of the season ticket commissions defendant did not pay. *Id.* at *1. Plaintiff's alternative promissory estoppel claim was based on the theory that, had it not been induced by defendant to require that suite lessees purchase a certain number of season tickets, it would have leased more suites. Thus, plaintiff sought damages in the amount of the commissions plaintiff alleged it would have earned had it leased all of the suites without the season ticket requirement. *Id.*[12] The court held that the plaintiff was entitled to pursue these "lost-opportunity reliance damages." *Id.* at *4.

To the extent that *The Superlative Group* interprets Kansas law to allow a theory of reliance damages in the promissory estoppel context that exceed a plaintiff's expectancy interest, the Court finds that Kansas and Colorado law are inconsistent. Colorado has adopted "the principles articulated by section 90(1) of the Restatement (Second) of Contracts." *Kiely v. St. Germain*, 670 P.2d 764, 767 (Colo. 1983). Under the Restatement, promissory estoppel permits "full-scale enforcement by normal [contract] remedies" that, like reliance damages in breach of contract claims, "should not put the promisee in a better position than performance of the promise would have put him." Restatement (Second) of Contracts § 90 cmt. d (1981). *The Superlative Group* provides no basis for the Court to conclude that the Colorado Supreme Court would depart from this principle. The other case that plaintiff cites, *Designer Direct, Inc. v.*

---

[12]Plaintiff sought breach of contract damages in the amount of $96,278.91 while its promissory estoppel claim sought damages totaling $210,000.00. *The Superlative Group*, 2014 WL 1385533, at *1.

12

*DeForest Redevelopment Auth.*, 368 F. 3d 751 (7th Cir. 2004), is also unavailing. In *Designer Direct*, the Seventh Circuit acknowledged the availability of "reliance damages under a theory of lost opportunity" under Wisconsin law, but did not discuss the limits of such a remedy because the plaintiff "did not prove the existence of a lost opportunity." *Id.* at 752.

Plaintiffs may believe, armed with the benefit of hindsight, that they could have earned far greater profit by acquiring and developing working interests in the Tomahawk Prospect than they were entitled to under the Agreement. However, because their lost opportunity damages theory is not supported by Colorado law, partial summary judgment is appropriate.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Hess Bakken Investments II, LLC's Motion for Partial Summary Judgment as to Working Interest Damages [Docket No. 81] is **GRANTED**. It is further

**ORDERED** that, at trial, plaintiffs Spring Creek Exploration and Production Company, LLC and Gold Coast Energy LLC will not be permitted to present evidence of the value of any working interests that they may have acquired had they not entered into, or treated as rescinded, the contract at issue in this case. It is further

**ORDERED** that, pursuant to the Court's Order dated September 5, 2014 (Docket No. 48), plaintiffs' third, fourth, fifth, and sixth claims for relief, as well as the portion of

plaintiffs' first claim for relief that alleges previously-dismissed breach of contract theories, are stricken.

DATED March 24, 2016.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge